IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RAYMOND LOPEZ                    :        CIVIL ACTION
                                 :
        v.                       :
                                 :
LOUIS FOLINO, et al.             :        No. 09-0975


**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                        August 30, 2012

Presently before this court is a pro se petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by Raymond Lopez and the response thereto.  Lopez, who is

currently incarcerated in the State Correctional Institution in Greene County,

Pennsylvania, challenges his incarceration for first degree murder.  For the reasons that

follow, the petition will be denied.

**FACTS AND PROCEDURAL HISTORY:**

The state court summarized the facts as follows:

> In September 2000, [Lopez], his nephew Emilio (sic) Martinez, and
> Brithard Bullard (aka "JR") drove from Camden, New Jersey to
> Philadelphia to purchase drugs.  After purchasing PCP and heroin,
> [Lopez] suggested they go to Hunting Park and smoke the drugs.
> Bullard drove, with Martinez seated in the front passenger seat and
> [Lopez] seated behind Bullard.  While parked, [Lopez] distracted
> Martinez by telling him to look in the bushes.  [Lopez] then shot
> Bullard in the back of the head with a handgun, killing him instantly.
> Martinez went into shock, and [Lopez] pulled him out of the car and
> ordered him to go with him.  The two men ran several blocks, got
> into a car, and drove back to New Jersey. [Lopez] threatened
> Martinez not to talk about the killing.

In 2001, [Lopez] was imprisoned at Trenton State Prison for an unrelated crime.  In May 2001[,] [Lopez] appeared, with counsel, at an extradition hearing for him to stand trial in Philadelphia for the murder of Bullard.  [Lopez] invoked his rights to remain silent and to have counsel present both orally and by signing a non-waiver of rights form.  In July 2001, Detective Dougherty and another Philadelphia detective transported [Lopez] from Trenton to the Philadelphia police station.  At the station, Detective Dougherty started a biographical information form for [Lopez], which becomes a part of every homicide file.  Detective Dougherty was not assigned to or familiar with the case.  As Detective Dougherty asked [Lopez] how to spell his name and for his date of birth, [Lopez] volunteered he wanted to "tell the truth about what happened to JR."  Detective Dougherty asked [Lopez] to be patient and told him that he first had to complete the biographical form and tell him certain things before [Lopez] could speak about the case.  Detective Dougherty left the room and familiarized himself with the case.  When he returned, Detective Dougherty read [Lopez] his Miranda rights.  Detective Dougherty then reviewed a preprinted form with [Lopez], asking if Lopez understood each of his Miranda rights.  In pertinent part, [Lopez] indicated he understood his right to speak with a lawyer before answering police questions, and that a lawyer would be provided to him if he could not afford one.  [Lopez] indicated he did not want to speak to a lawyer or have one present during questioning.  [Lopez] memorialized his understanding by writing "yes" and "no' where appropriate and signing the form.  [Lopez] then gave a statement to Detective Dougherty, telling him another individual had shot Bullard.

Commonwealth v. Lopez, 859 A.2d 832, No. 1544 EDA 2003, at 1-3 (Pa. Super. July 22,

2004) (unpublished memorandum).

On April 25, 2003, a jury in the Court of Common Pleas of Philadelphia County

found Lopez guilty of first degree murder.  The Honorable Pamela Pryor Dembe

sentenced Lopez to life imprisonment.

Lopez filed a direct appeal arguing that:

1) he was deprived of the right to remain silent and his right to counsel because the police failed to honor the invocation of his rights and re-initiated questioning

2

rendering his statements involuntary and constitutionally invalid;

2) the trial court erred in ruling that the Commonwealth could introduce evidence of Lopez's prior contact with the criminal justice system if the defense opened the door by attacking the voluntary nature of Lopez's statement to police;

3) the trial court erred in denying the defense motion to redact portions of Lopez's statement to delete references to money owed to pay for a lawyer;

4) the trial court erred by denying defense counsel's request to call two witnesses; and

5) the trial court erred in instructing the jury.

The Pennsylvania Superior Court affirmed the judgment of sentence on July 22, 2004.

Commonwealth v. Lopez, 859 A.2d 832 (Pa. Super. July 22, 2004). The Pennsylvania

Supreme Court denied Lopez's petition for allowance of appeal on June 6, 2005.

Commonwealth v. Lopez, 875 A.2d 1074 (Pa. June 6, 2005).

On October 14, 2005, Lopez filed a pro se petition in the state court under the Post

Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq. asserting the following

claims:

1) all previous counsel were ineffective for failing to raise and preserve a claim that the evidence was insufficient to support a verdict;

2) appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for failing to call Detective Kean;

3) appellate counsel was ineffective for failing to argue on appeal that the prosecutor deprived him of a fair trial by vouching for the credibility of his witnesses;

4) appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for not objecting to the court's charge on

3

accomplice liability;

5) all previous counsel were ineffective for failing to argue that Lopez's statement should have been suppressed as it violated his rights under Miranda;

6) all previous counsel were ineffective for failing to object at trial to the removal of persons from the courtroom; and

7) all previous counsel were ineffective for failing to allege that the prosecutor "suborned" perjury with respect to Emiliano Martinez's testimony.

Counsel appointed to represent Lopez in his PCRA matter subsequently filed a letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), certifying that he had reviewed the entire record and concluded that there were no meritorious issues to advance before the PCRA court.  The court denied Lopez's PCRA petition on June 26, 2006.

Lopez raised three issues on appeal to the Superior Court:

1) ineffective assistance of trial counsel due to counsel's failure to raise a defense consistent with Lopez's version of events;

2) due process violations caused by prosecutorial misconduct when the prosecutor gave his opinion that Lopez's version of the events was a lie and that the murder was an execution with Lopez as the executioner; and

3) the trial court erred by failing to grant a mistrial when trial counsel objected to the prosecutor vouching for the credibility of its witness, Emiliano Martinez.

On December 20, 2007, the Superior Court affirmed the denial of the PCRA petition.

Commonwealth v. Lopez, 945 A.2d 764, No. 2132 EDA 2006 (Pa. Super. Dec. 20, 2007) (unpublished memorandum).  Lopez's petition for allowance of appeal to the Supreme

4

Court of Pennsylvania was denied on May 6, 2008.  <u>Commonwealth v. Lopez</u>, 947 A.2d

736 (Pa. May 6, 2008).

Lopez filed a petition for a federal writ of habeas corpus on March 2, 2009,[1]

claiming that:

> 1) he was deprived of the right to remain silent and his right to counsel because the police failed to honor the invocation of his rights and re-initiated questioning rendering his statements involuntary and constitutionally invalid;
>
> 2) the trial court erred by denying defense counsel's request to call two witnesses;
>
> 3) the trial court erred in instructing the jury;
>
> 4) ineffective assistance of trial counsel due to counsel's failure to raise a defense consistent with Lopez's version of events;
>
> 5) due process violations caused by prosecutorial misconduct when the prosecutor gave his opinion that Lopez's version of the events was a lie and that the murder was an execution with Lopez as the executioner; and
>
> 6) the trial court erred by failing to grant a mistrial when trial counsel objected to the prosecutor vouching for the credibility of its witness, Emiliano Martinez.

Respondents have filed an answer to Lopez's habeas petition asserting that Lopez is not

entitled to federal habeas relief because his claims are procedurally defaulted and

---

[1]I will presume that Lopez's petition was given to prison authorities on the date on which it was signed, March 2, 2009, and his petition will be deemed filed as of that date.  <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir. 1998) (citing <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (a <u>pro se</u> petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court).  Thus, he is within the one-year limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  28 U.S.C. § 2244(d)(1)(A) (a petitioner must file a habeas petition within one year of the date on which the judgment of sentence becomes final by the conclusion of direct appeal or the expiration of time for seeking such review).

meritless.

**DISCUSSION**:

    **A.**    **Standard of Review**

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

    **B.**    **Lopez's Claims**

        **1.**    **Claim One: Lopez was deprived of the right to remain silent and his right to counsel because police failed to honor the invocation of his rights and re-initiated questioning rendering his statements involuntary and constitutionally invalid**

Lopez claims that his right to counsel and right to remain silent were infringed by Detective Dougherty after Dougherty initiated questioning without counsel present.  He contends that this conduct violates the prohibition against interrogating a suspect in custody without counsel present after the suspect has invoked his right to counsel.

Edwards v. Arizona, 451 U.S. 477, 482 (1981); Miranda v. Arizona, 384 U.S. 436, 474 (1966).  Respondent asserts that Lopez initiated further communication with Dougherty and that he knowingly and intelligently waived his Miranda rights before giving the statement.

In Edwards, the Court held that a suspect must not be subjected to further questioning after invoking his right to counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police."  451 U.S. at 484-85.  See also Miranda, 384 U.S. at 475 ("If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." (citation omitted)).

In determining that the trial court properly refused to suppress Lopez's statement, the Superior Court reasoned:

> [Lopez] volunteered he wanted to "tell the truth about J.R."  Detective Dougherty then stopped [Lopez] from saying anything further, and specifically informed [Lopez] he had to first tell him "certain things." Detective Dougherty then thoroughly warned [Lopez] of his rights to remain silent and to counsel, pursuant to *Miranda*.  [Lopez] *acknowledged his understanding of these rights verbally and by signing a form*.  [Lopez] then *voluntarily* gave the statement which is now the subject of our inquiry. There is no evidence that Detective Dougherty coerced, tricked, or threatened [Lopez] into giving this statement.  [Lopez] made his incriminating statement after voluntarily waiving his *Miranda* rights.  We also reject [Lopez]'s contention that Detective Dougherty improperly commenced interrogation when he asked [Lopez] his name and date of birth, because inquiry of nonincriminating biographical information does not amount to police interrogation.  Based on this evidence, we conclude

7

> the Commonwealth met its burden of proving [Lopez] *knowingly and intelligently waived his rights before giving his statement.*

Commonwealth v. Lopez, 859 A.2d 832, No. 1544 EDA 2003, at 8-9 (Pa. Super. July 22, 2004) (citations omitted) (emphases added).  The Superior Court's decision is clearly premised on its determination that the evidence showed Lopez initiated the discussion with the police and that he made an intelligent waiver.

The Superior Court's findings of fact are entitled to deference.  Lopez contends that there can be no intelligent waiver here because no inquiries were made regarding his level of education.  I disagree.  While Lopez's educational background may play *some* role, it is but one factor under the totality of circumstances analysis courts should employ in determining whether a waiver is valid.  The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.  See Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

I find that the record amply supports the Superior Court's determination that Lopez voluntarily waived his right to counsel.  The record shows that Detective Dougherty took careful steps to notify Lopez of his specific rights and that Lopez intelligently waived those rights.  See N.T. 4/21/03 at 12-19.  Upon consideration of the foregoing, I conclude that the state courts' determination of this issue was reasonable and not contrary to established law.  Accordingly, claim one of the petition is denied.

### 2.    Claim Two: The trial court erred by denying defense counsel's request to call two witnesses.

Lopez next claims that he was denied his constitutional right to present a defense when the trial judge refused to allow the testimony of two witnesses, Shalisa Thomas and Timothy Bullard, two of the victim's siblings.  Lopez asserts that these witnesses would have testified that the victim told them that a drug dealer, Michael Ramseur, wanted to kill him because the victim owed him $41,000.  Lopez asserts that the testimony should have been admitted because it was relevant and fell under the hearsay exception as a "statement against interest."  Respondents argue that Lopez's claim fails because the testimony does not fall within this exception, and even if it does, he cannot show that the evidentiary ruling violates federal law.

"Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute."  Pa. R. Evid. 802; see Fed. R. Evid. 802 (replacing "Pennsylvania Supreme Court" with "United States Supreme Court").  Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Pa. R. Evid. 801; Fed. R. Evid. 801.  The "statement against interest" exception provides:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

9

> In a criminal case, a statement tending to expose the declarant to criminal
> liability is not admissible unless corroborating circumstances clearly
> indicate the trustworthiness of the statement.

Pa. R. Evid. 804(b)(3).  The Federal Rules only differ with respect to this exception in that they require "corroborating evidence" only when the statement exposes the declarant to criminal liability *and* is offered to exculpate the defendant.  Fed. R. Evid. 804(b)(3).

The Superior Court explained that under Pennsylvania law, the trustworthiness of a statement "is demonstrated when [it] is written or orally made to reliable persons of authority or those having adverse interest to the declarant."  Commonwealth v. Lopez, 859 A.2d 832,  No. 1544 EDA 2003, at 12-13 (Pa. Super. July 22, 2004) (internal quotation and citations omitted).  In determining that the hearsay exception did not apply to the witnesses proposed testimony, the court held that "there are no corroborating circumstances to render his statement that he owed drug dealer Mike money reliable.  The statement was made to [the victim's] siblings, who were not persons of authority and did not have adverse interests to him."  Id.

Respondents correctly note that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citations omitted).  Nevertheless, even if the testimony was admissible under the exception to the hearsay rule, this claim lacks merit.[2]

_____

[2] The Pennsylvania Superior Court has held that "to be admissible, a declaration against penal interest must exculpate the defendant *from the crime with which he is charged* and bear

While Lopez has a constitutional right to present defensive evidence that is relevant and not barred by an evidentiary rule, it is well-settled that a "defendant is [not] denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence."  United States v. Scheffer, 523 U.S. 303, 316 (1998) (citing Chambers v. Mississippi, 410 U.S. 284, 302-303(1973)).  If an error is discovered "in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht."  Fry v. Pliler, 551 U.S. 112, 121 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619 (1993) (an error requires reversal only if it had substantial and injurious effect or influence in determining the jury's verdict).

Here, the testimony at issue would not have had such an effect.  Therefore, even if I were to find that the testimony should have been admitted, which I decline to do, Lopez cannot show that the ruling had an injurious effect.  I conclude that the state courts' determination of this issue was reasonable and not contrary to established law.  Accordingly, claim two of the petition is denied.

### 3.    Claim Three: The trial court erred in instructing the jury

In his third claim, Lopez asserts that his constitutional right to due process was denied when the trial judge provided a supplemental instruction after the jury requested

---

sufficient indicia of reliability."  <u>Commonwealth v. Hutchinson</u>, 434 A.2d 740, 745 (Pa. Super. 1981) (citing <u>Commonwealth v. Hackett</u>, 307 A.2d 334, 338 (Pa. Super. 1973); <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973)) (emphasis added).

an explanation of first and third degree murder.  The judge, in his original jury

instruction, stated:

> Again, in deciding if the defendant acted with malice, consider his words,
> his actions, and all the surrounding circumstances.  And if you believe that
> the defendant used a deadly weapon on a vital part of the victim's body, you
> may, if you choose, use that fact as evidence of malice.

(N.T. 4/24/03 at 8).  The trial judge then gave the following supplementary instruction:

> All right.  I told you that you may, if you wish, use the intentional use of a
> deadly weapon, meaning a gun, on a vital part of a victim's body as
> evidence of malice. You may also, if you wish, find if there was an
> intentional use of a gun on a vital part of the victim's body as evidence of
> specific intent to kill.  Okay?  Everybody have it in their heads now?  The
> difference between specific intent to kill is really the distinguisher there.
> All right.

Id. at 11.  Lopez concedes that this is an accurate recitation of the law.  See Petitioner's

Memorandum, at 32.  He nonetheless asserts that because this was the final guidance

provided to the jury before reaching its verdict, he was deprived of a fair trial.  Lopez also

argues that the Superior Court's decision to affirm the trial court decision is not entitled to

deference, because the court misconstrued his claim and did not address his due process

argument.

The Superior Court, in affirming, held:

> Our standard in reviewing challenges to a trial court's jury charges is
> limited to a determination of whether the court committed a clear abuse of
> discretion or an error of law which controlled the outcome of the case.  A
> trial court's charge to the jury will be upheld so long as it adequately and
> accurately reflects the law and guides the jury in its deliberation.

Instantly, the court's explanation of specific intent complained of by [Mr. Lopez] is a correct statement of law.  We conclude the trial court's response to the jury's question was proper.

Commonwealth v. Lopez, 859 A.2d 832, No. 1544 EDA 2003, at 14 (Pa. Super. July 22, 2004) (unpublished memorandum) (citations omitted).  Lopez submits that the court failed to consider the proper federal standard governing such a claim.  He contends that "the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  See Petitioner's Memorandum, at 33-34; Boyde v. California, 494 U.S. 370, 380 (1990).

While Lopez's recital represents one of the required elements in showing that a jury charge constitutes a due process violation, it is only one of two requirements.  The United States Supreme Court recited the proper standard in Waddington v. Sarausad, 129 S.Ct. 823 (2009).

> [T]he defendant *must show both that the instruction was ambiguous and* that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  In making this determination, the jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"

Id. at 831-32 (citations omitted) (emphasis added); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) ("[I]t must be established not merely that the instruction is undesirable,

13

erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment").

Lopez concedes that the supplementary instruction given by the trial judge accurately stated the law.  Indeed, he does not argue that there was any ambiguity in the instruction.  Lopez has failed to show that his constitutional right to due process was violated by the supplemental charge.  Therefore, claim three of the petition is denied.

### 4.  Claim Four: Ineffective assistance of trial counsel due to counsel's failure to raise a defense consistent with Lopez's version of events

Lopez next contends that he was denied his Sixth Amendment right to effective assistance of counsel.  Lopez asserts that his trial counsel did not emphasize his version of the events during closing arguments, but rather blamed Emiliano Martinez, the other passenger in the car at the time of the shooting.  Lopez argues that his counsel's attempt to show that the bullet could have come from any direction within the car – or even from outside of it – gave the jury the impression that Lopez's version lacked credibility.  Respondents assert that Lopez waived this claim by not raising it on direct appeal or in his PCRA petition and alternatively, that Lopez failed to demonstrate that counsel was ineffective.[3]

---

[3]Where a state court refuses to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by the procedural default doctrine from considering the claims.  Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004).  However, if the state court reaches the claim on the merits, there is no bar to federal court review.  Id.  Because the Superior Court addressed the merits of Lopez's claim, as a component of a layered claim of ineffective assistance of counsel on PCRA review, I will address this claim.

The current federal law governing claims of ineffective counsel was established in

Strickland v. Washington, 466 U.S. 668 (1984):

> The benchmark for judging any claim of ineffectiveness must be whether
> counsel's conduct so undermined the proper functioning of the adversarial
> process that the trial cannot be relied on as having produced a just result.
>
> ****
>
>     A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has two
> components.  First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the defendant
> by the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial, a
> trial whose result is reliable.

Id. at 686-87.  The Court went on to emphasize that "[j]udicial scrutiny of counsel's

performance must be highly deferential" and a court should employ "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance."  Id. at 689.  In determining prejudice, "the question is whether there is a

reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt."  Id. at 695.

    "It is past question that the rule set forth in Strickland qualifies as 'clearly

established Federal law, as determined by the Supreme Court of the United States.'"

Williams, 529 U.S. at 391.  Thus, Lopez is entitled to relief if the Pennsylvania courts'

decision rejecting his claims of ineffective assistance of counsel was either "contrary to,

or involved an unreasonable application of," that established law.  Id.; see also Woodford

15

v. Visciotti, 537 U.S. 19, 24-25 (2002); Bell v. Cone, 535 U.S. 685, 698-699 (2002) ("It is

not enough to convince a federal habeas court that, in its independent judgment, the

state–court decision applied Strickland incorrectly.")

The Superior Court held that this claim lacked merit because defense counsel

never in fact blamed Martinez and counsel specifically referenced Lopez's statement on

no less than two occasions:

> [W]hile [Lopez] asserts that counsel's alleged strategy during closing
> arguments appears to have been to blame Martinez for the murder, [Lopez]
> fails to cite any portion of counsel's closing argument wherein counsel, in
> fact, blamed Martinez for the murder.  Counsel did spend a good deal of
> time attempting to undermine Martinez's credibility during closing
> arguments, which was more than reasonable given the key role Martinez
> played in the Commonwealth's case and the fact that Martinez clearly had
> credibility problems.  Moreover, during closing arguments, counsel indeed
> mentioned [Lopez's] statement on no less than two occasions and
> specifically referenced that, in his statement, [Lopez] denied killing the
> victim and that [Lopez] provided police with who did kill the victim, how
> the murder occurred, and why the murder occurred.

See Commonwealth v. Lopez, 945 A.2d 764, No. 2132 EDA 2006, at 6-7 (Pa. Super.

Dec. 20, 2007) (unpublished memorandum).

Pursuant to the evidence presented at trial, defense counsel crafted his closing

argument based upon the reasonable strategy of attacking Mr. Martinez's credibility.  A

defendant must overcome the presumption that his attorney's actions might be considered

sound trial strategy.  Strickland, 466 U.S. at 689.  Lopez has failed to do so because the

facts in the case support trial counsel's strategy.  I conclude that the state courts'

determination of this issue was reasonable and not contrary to established law.  Therefore,

claim four of the petition is denied.

   5.   **Claim Five: Due process violations caused by prosecutorial misconduct when the prosecutor gave his opinion that Lopez's version of the events was a lie and that the murder was an execution with Lopez as the executioner**

   In his fifth claim, Lopez asserts that he was denied his right to due process of law when the prosecutor, during closing arguments, (a) argued that Lopez's statement to police was fabricated and (b) referred to the crime as an "execution" and Lopez as the "executioner."  Lopez contends that these remarks constitute prosecutorial misconduct because a prosecutor may not give his own opinion or personal beliefs.  Respondents assert that Lopez's claim is procedurally defaulted and in the alternative, without merit.[4]

   The federal standard governing prosecutorial misconduct claims "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

   The Superior Court addressed this issue as follows:

   [D]uring closing arguments, trial counsel vehemently attacked the credibility of Martinez.  Moreover, counsel pointed out that [Lopez] informed police that he did not shoot Bullard and that Torres, in fact shot Bullard.  The prosecutor's comments

---

   [4] Respondents assert that this claim should be considered procedurally defaulted as Lopez couched this claim to the Superior Court on PCRA review as a layered claim of ineffective assistance of counsel.  I disagree.  Courts should construe pro se pleadings liberally.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).  However "inartfully pleaded," a pro se prisoner complaint is held to less stringent standards than formal pleadings drafted by lawyers.  Id.  Further, if a state court reaches a claim on its merits, there is no bar to federal court review.  See Haines v. Kerner, supra.  Because the Superior Court addressed the merits of Lopez's claim, I shall do so as well.

17

during closing arguments regarding [Lopez's] credibility were made in response to defense counsel's credibility arguments and were supported by the record.  The comments, therefore, were not improper.

[Lopez] next argues the prosecutor committed misconduct during closing arguments by repeatedly referring to the murder as an "execution" and to [Lopez] as an "executioner."  [Lopez], however, overlooks the fact that evidence submitted at trial demonstrated that Bullard was shot at close range in the back of the head.  As such, the complained-of comments were justified as having a reasonable basis in the record and as being within the bounds of vigorous oratory permitted a prosecutor in closing argument. . . . [E]ven assuming, arguendo, that certain of the comments may have tested the bounds of propriety, it is clear that none were of such an inflammatory nature that counsel's failure to object could have resulted in prejudice to the defense.

 Commonwealth v. Lopez, 945 A.2d 764, No. 2132 EDA 2006, at 8-9 (Pa. Super. Dec.

20, 2007) (unpublished memorandum) (citations omitted).

The prosecutor's comments regarding Lopez's credibility were in response to trial

counsel's argument that Emiliano Martinez was a liar.  See N.T. 4/23/03, at 137-139.

Attorneys are afforded considerable latitude during closing arguments, and can employ

vigorous oratory in arguing the evidence and reasonable inferences that can be drawn

from that evidence.  See United States v. Harrison, 2012 WL 2478335 (3d Cir 2012).

Lopez's statements to the police, when analyzed in conjunction with the evidence

presented at trial, provided an opportunity for the prosecution to question the credibility

of Lopez's version of events.  The prosecutor's description of the murder as an execution

and Lopez as the executioner can also be argued based upon the evidence presented at

trial.  The shooter fired into the victim with a handgun which was placed directly against

the back of his head.  See N.T. 4/22/03, at 28.  The court's holding that the prosecutor's

18

comments did not infect the trial with unfairness as to make the resulting conviction a

denial of due process was neither contrary to, nor an unreasonable application of, federal

law.  Therefore, claim five of the petition is denied.

### 6. Claim Six: The trial court erred by failing to grant a mistrial when trial counsel objected to the prosecutor vouching for the credibility of its witness, Emiliano Martinez

In his final claim, Lopez argues that the trial court abused its discretion by failing

to grant a mistrial after the prosecutor impermissibly vouched for the credibility of the

Commonwealth's witness, Emiliano ("Nay Nay") Martinez, by stating:

> Who did Millie owe the $4,000 to?  We're talking about the same $4,000,
> his words, Ronald Lopez.  He paid for my lawyer.  The truth doesn't change
> merely because you're on page 5 as opposed to page 3.  Truth that from day
> one, when Nay Nay was interviewed, through his interview, through the
> preliminary hearing testimony, and he was asked a couple questions from
> the preliminary hearing testimony, you have to ask yourself how much
> wasn't asked, because it was on all fours with his statement and his
> testimony.  Okay.

(N.T. 4/23/03 at 172-73 (emphasis added)).  Lopez claims that through these statements

the prosecutor indicated that information not presented to the jury as evidence supported

the truthfulness of his Martinez's testimony.  See Petitioner's Memorandum in Support of

Petition for Writ of Habeas Corpus at 58.

"Vouching is a type of prosecutorial misconduct.  It constitutes an assurance by the

prosecuting attorney of the credibility of a government witness through personal

knowledge or by other information outside of the testimony before the jury."  Lam v.

Kelchner, 304 F.3d 256, 271 (3d Cir. 2002) (United States v. Walker, 155 F.3d 180, 184

(3d Cir. 1998).  A prosecutor's vouching for the credibility of a government witness raises two concerns: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.  United States v. Young, 470 U.S. 1, 18 (1985).  In order to find vouching, two criteria must be met: 1) the prosecution must assure the jury that the testimony of a government witness is credible, and 2) this assurance must be based on either the prosecutor's personal knowledge or other information that is not before the jury.  Walker, 155 F.3d at 187.

Prosecutorial misconduct such as vouching does not rise to the level of a due process violation unless it affects the fundamental fairness of the trial.  Lam, 304 F.3d at 271.  Habeas relief is not available simply because the prosecutor's remarks were undesirable or even universally condemned.  Id.  As previously noted, the relevant question for a habeas court is whether "so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Id.; Darden v. Wainwright; Donnelly v. DeChristoforo, supra.

Here, in rejecting Lopez's claim that the prosecutor improperly vouched for Martinez, the Superior Court explained that:

Improper bolstering of a witness occurs when the Commonwealth places the

prestige of the government behind the witness through personal assurances of his or her veracity, or the Commonwealth indicates that information which is not before the jury supports the witness' testimony.  Here in making the complained of statement, the Commonwealth did not make personal assurances regarding Martinez's veracity.  The prosecutor did seem to suggest that questions not posed to Martinez, i.e., information not before the jury, supported Martinez's credibility.  To the extent that this suggestion can reasonably be interpreted as being improper, we conclude that the comment does not constitute reversible error because the comment did not have the unavoidable effect of [prejudicing the] jury, forming in their minds fixed bias and hostility toward [Lopez] so that they could not weigh the evidence objectively and render a true verdict.

 Commonwealth v. Lopez, 945 A.2d 764, No. 2132 EDA 2006, at 11-12 (Pa. Super. Dec. 20, 2007) (unpublished memorandum) (citation omitted).

Lopez fails to satisfy the Walker two-part test to establish vouching.  The prosecutor did not base his arguments on personal knowledge or on information not contained in the record.  Martinez's statement to the police was part of the record as it was read to the jury as a prior consistent statement.  I conclude that the state courts' determination of this issue was reasonable and not contrary to established law.  Therefore, claim six of the petition is denied.

**CONCLUSION:**

After close and objective review of the arguments and evidence, I conclude that Lopez's petition for writ of habeas corpus is meritless.  Accordingly, Lopez's petition will be denied.

Similarly, because Lopez's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter.  See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474

21

(2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.